UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re<br><br>**PEPTIMMUNE, INC.,**<br><br>Debtor. | Chapter 7<br><br>Case No. 11-12298-WCH |

**MOTION FOR AN ORDER (A) AUTHORIZING AND APPROVING
BIDDING PROCEDURES IN CONNECTION WITH PROPOSED SALE OF SUBSTANTIALLY
ALL OF THE DEBTOR'S ASSETS; (B) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS; (C) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND
(D) GRANTING OTHER RELATED RELIEF**

John J. Aquino, the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Peptimmune, Inc. (the "Debtor"), hereby submits this motion (the "Motion") for an order (the "Order") (a) authorizing bidding procedures to be employed in connection with the proposed sale (the "Asset Sale") of substantially all of the Debtor's assets (collectively, the "Purchased Assets") to Peptimmune Acquisition, LLC (together with any designees, the "Buyer" ) or another bidder submitting a higher or better offer at a proposed auction (the "Auction"); (b) authorizing and approving sale of the Purchased Assets free and clear of liens, claims, encumbrances and interests pursuant that certain Asset Purchase Agreement dated July 21, 2011, between the Trustee and Buyer (the "Asset Purchase Agreement"), a true and correct copy of which, except for the schedules thereto, is attached hereto and made a part hereof as Exhibit A; (c) authorizing assumption and assignment of certain executory contracts, and (d) granting related relief. In support of the Motion, the Trustee respectfully represents as follows:

13491845.15

**Jurisdiction and Venue**

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U. S.C. § 157(b). The statutory predicates for the relief requested herein are sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code").

**Procedural Background**

2. On March 21, 2011 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts. Thereafter, United States Trustee appointed John J. Aquino of Anderson Aquino LLP, 240 Lewis Wharf, Boston, Massachusetts, as Chapter 7 Trustee (the "Trustee"), and the Trustee continues to serve as Chapter 7 trustee.

**Case Background**

3. Before the Petition Date, the Debtor was a clinical stage biotechnology company engaged in the business of developing therapeutics for the treatment of central nervous system and autoimmune disorders. The Debtor was formed as a Delaware corporation in 1995. It was acquired by Genzyme Corporation in 1999 and subsequently spun off as an independent entity in or about 2002. The Debtor most recently maintained a principal place of business in Somerville, Massachusetts. Prior to that, the Debtor maintained its principal place of business in Cambridge, Massachusetts.

4. Over the past 15 years, the Debtor raised approximately $100 million in equity and debt, which was used for the further research and development of the aforesaid drug therapies. As set forth more particularly below, the Debtor elected to file its Chapter 7 petition

after first failing in attempts to raise approximately $35 million needed to advance its lead drug (known as PI-2301) into a mid-stage clinical trial for treating multiple sclerosis or to locate a strategic partner or purchaser willing to make an acceptable offer to purchase the Debtor's assets, including its intellectual property.

5. In 2009, the Debtor successfully completed the second of two early phase clinical trials designed to test the safety and efficacy of its PI-2301 copolymer drug, which was being developed to treat patients suffering from multiple sclerosis. During its operating history, the Debtor was awarded several patents based upon its biochemical research, including multiple patents associated with the PI-2301 family of drugs. Prior to receiving FDA authorization to market PI-2310, however, the Debtor was required to complete additional clinical testing, the next phase of which was estimated to require approximately $35 million in additional investment capital.

6. Pursuant to a letter agreement dated February, 16, 2010 (as subsequently amended, the "<u>MTS Engagement Letter</u>"), the Debtor engaged MTS Health Partners, L.P. ("<u>MTS</u>") for the purpose of raising $35 million in equity financing to fund the mid-stage clinical trial of PI-2301. MTS is a merchant bank which specializes in providing strategic advisory and capital raising services as well as private equity capital to companies in the global healthcare industry. Notwithstanding significant marketing efforts expended over the following six months, MTS was unable to locate parties willing to invest the amount of capital required by the Debtor to fund the mid-stage clinical trial. Accordingly, in late fall of 2010, at the request of the Debtor, MTS shifted its focus from raising capital to locating a strategic partner or potential purchaser of the Debtor's intellectual property. MTS identified approximately 12 "strategic targets", or companies that it believed would benefit from an acquisition of the Debtor's patent rights and

related assets. Although several of the companies expressed interest in acquiring the Debtor's intellectual property, by February, 2011, MTS was unable to reach agreement with any of the parties on the terms of a sale which were acceptable to the Debtor. Without sufficient funds to continue operations or to preserve the value of its intellectual property, the Debtor filed its Chapter 7 petition.

### Chapter 7 Case Actions

7. Since the Petition Date, the Trustee has taken appropriate steps to preserve the value of the Debtor's assets. Among other things, the Trustee has engaged special counsel, experienced in the area of intellectual property, to maintain the Debtor's substantial portfolio of granted and pending patents. To date, in addition to the legal services required to be expended to ensure maintenance of the Debtor's intellectual property, special counsel has also advanced filing fees and other costs associated with the maintenance of the intellectual property. Counsel has recently indicated, however, that it will be unable to continue to advance such filing fees and other out-of-pocket costs going forward. As the estate is without sufficient funds to maintain the intellectual property for an extended period of time, the Trustee believes that an expeditious sale of the Debtor's assets is necessary to avoid deterioration of the value of such assets for the estate, creditors, and all parties in interests.

8. Since his appointment, the Trustee has negotiated with several parties, including the Buyer, that have expressed an interest in the purchase of the Debtor's assets, including the Debtor's intellectual property rights. After extensive arms' length negotiations, the Buyer and Trustee entered into the Asset Purchase Agreement.

### Relief Requested

9. By this Motion, the Trustee requests an order, substantially in the form of the

- 4 -

13491845.15

order attached hereto as Exhibit B (the "Bidding Procedures Order"), authorizing and approving (i) the bidding procedures to be employed in connection with the proposed Asset Sale; (ii) payment of Seventy-Five Thousand ($75,000) Dollars to Buyer as a break-up fee (the "Break-Up Fee"), which Fee shall be payable in the event that the Court approves a sale a bidder other than the Buyer, and such other bidder consummates the transsaction; (iii) scheduling an auction and hearing to approve the proposed sale to the parties holding the highest and best bid (the "High Bidder") and the highest back-up bid (the "High Back-Up Bidder") as determined by the Trustee on the terms set forth herein (the "Sale Hearing"); and (iv) approving the form and manner of notice of the Motion and the Sale Hearing.

10. The Trustee further requests that, at the Sale Hearing, the Court enter an order substantially in the form of Exhibit C hereto (the "Sale Order") (i) approving a sale to Buyer pursuant to the Asset Purchase Agreement or to another bidder submitting a higher or better offer (the "Successful Purchaser"), (ii) approving the Asset Purchase Agreement or a substantially similar asset purchase agreement applicable the Successful Purchaser, and (iii) authorizing the Trustee (a) to sell the Purchased Assets, free and clear of all liens, claims, encumbrances, and interests (other than certain specified assumed liabilities), and (b) to assume and assign to the Successful Purchaser certain executory contracts associated with the Debtor's business (the "Assigned Contracts").

**A.    The Proposed Sale to Buyer**

11. On July 21, 2011, the Trustee and Buyer entered into the Asset Purchase Agreement, subject to higher and better offers and the approval of this Court. Pursuant to the Asset Purchase Agreement, Buyer has offered to purchase the Purchased Assets for a purchase price of $1,500,000 (the "Initial Bid").

12. Below is a summary of material provisions of the Asset Purchase Agreement:[1]

a) Purchase Price. $1,500,000.

b) Deposit. $100,000 cash deposit paid upon entry of the Bidding Procedures Order to be held in a Trustee account. Interest earned thereon, if any, shall accrue to the benefit of and be payable to the Buyer or applied against the Purchase Price.

c) Purchased Assets. Substantially all of the tangible and intangible assets of the Debtor, excluding, among other things, (a) those assets of the Debtor which relate exclusively to the DEEP assets and related intellectual property; (b) avoidance actions of the Trustee; (c) cash on hand and accounts receivable; (d) tax refunds and insurance refunds or proceeds; (e) issued and outstanding stock in the Debtor or its non-debtor affiliates; and (f) the trademark "Declion" (together, the "Excluded Assets").

d) Bankruptcy Court Approval. The sale is conditioned on the Court entering an order, in form and content reasonably satisfactory to the Buyer, approving the sale of the Purchased Assets to the Buyer, which order shall contain, without limitation, a finding that the Buyer is a good faith purchaser for value within the meaning of section 363(m) of the Bankruptcy Code and a provision that the stays of Bankruptcy Rules 6004(g) and 6006(d) do not apply.

e) Financing. The Trustee shall obtain adequate funding, not to exceed Thirty Thousand ($30,000) Dollars, which will be provided by the Buyer to the Debtor through and including the closing of the sale of the Assets to the Buyer (the "Closing"), in the form of post-petition financing (the "Post-Petition Loan"). Such funding shall be (i) applied as a credit bid toward the purchase price paid by the Buyer at Closing in the event the Buyer is the Successful Purchaser, or, in the event the Buyer is not the Successful Purchaser or (ii) repaid to the Buyer upon the earlier to occur of: (A) receipt of the proceeds of sale of the Purchased Assets by the Trustee, or (B) payment of the Break-Up Fee to the Buyer.

f) Licensing. The Trustee shall have entered into a license agreement with Declion Pharmaceuticals, Inc. and its French affiliate, Declion SAS (collectively, "Declion") for a fully-paid up, perpetual, royalty and payment-free exclusive, freely sub-licensable and assignable license (collectively a "DEEP License") from Declion to use and exploit all of the DEEP assets and related intellectual property owned by Declion that are necessary or useful for the manufacturing, development or commercialization of (i) PI-2301 for any indication, including Multiple Sclerosis and/or (ii) any product in the field of Multiple Sclerosis which DEEP License shall be assigned to the Buyer, or, in the event the Buyer is not the Successful Purchaser, the Trustee shall assign the DEEP License to the

---

[1] This summary is intended solely as an overview of the terms of the Asset Purchase Agreement. In the event of any inconsistency between the summary provided herein and the actual provisions of the Asset Purchase Agreement, the terms of the Asset Purchase Agreement shall control.

- 6 -

13491845.15

    Successful Purchaser as part of the sale.

  g) <u>Termination</u>. Buyer may terminate the Asset Purchase Agreement (i) if the Bidding Procedures Order is not entered by certain deadlines set forth in the Asset Purchase Agreement, (ii) if the Sale Order is not entered by certain deadlines set forth in the Asset Purchase Agreement, (iii) after three (3) days following the entry of the Sale Order, if the Closing has not occurred other than as a result of Buyer's material breach, (iv) if there is an uncured breach by the Trustee, or (v) if the Trustee fails to protect the Debtor's intellectual property through prosecution and maintenance until the Closing, subject to adequate funding provided by the Buyer.

**B. The Bidding Procedures**

  13. The Asset Purchase Agreement requires entry of a bidding procedures order in the form of the Bidding Procedures Order, or otherwise reasonably satisfactory to the Trustee and Buyer. The proposed Bidding Procedures Order provides that the Trustee will pay a Break-Up Fee, in the event that, notwithstanding submission of the Buyer's Initial Bid to the Court for approval, and the satisfaction or waiver of all material conditions precedent contained in the Asset Purchase Agreement, the Court approves a sale to a party other than the Buyer; and the Buyer subsequently does not acquire the Purchased Assets. The Break-Up Fee will be paid without further court-order, and without the need for substantiation by Buyer upon receipt of the proceeds from the Successful Purchaser.

  14. In accordance with the terms of the Asset Purchase Agreement, the Bidding Procedures Order must contain the following additional requirements for competing bids:

  a) In order to bid, a potential bidder must (i) submit to the Trustee's counsel, Anderson Aquino, LLP, 240 Lewis Wharf, Boston, MA 02110, Attn: Donald F. Farrell, Jr., a written irrevocable offer for the Purchased Assets in the minimum amount of $1,575,000 (the "<u>Proposed Bid</u>"); (ii) deliver an earnest money deposit to the Trustee's counsel in the amount of at least $100,000 (the "<u>Bid</u>

- 7 -

13491845.15

    Deposit") in the form of a bank check payable to John J. Aquino, Chapter 7 Trustee of Peptimmune, Inc., or wire transfer payable to the trust account of the Trustee no later than 12:00 noon on the date established by the Court pursuant to this Bid Procedures Motion (the "Bid Deadline"). The Proposed Bid must identify the proposed bidder and contain such documents and information so as to establish to the reasonable satisfaction of the Trustee, in his sole discretion, that (a) the proposed bidder can pay the purchase price at the closing and (b) that the proposed bidder shall close the sale no later than three (3) days after entry of an order confirming the sale.

  b) Proposed Bids must provide that the potential bidder will enter into a sale agreement substantially similar to the Asset Purchase Agreement.

  c) Proposed Bids must not be subject to financing, due diligence or other contingencies not provided for in the Asset Purchase Agreement.

  d) Only those bids that meet the requirements of the preceding three (3) paragraphs will be considered a "Qualified Bid." For all purposes herein, the Buyer's bid pursuant to the Asset Purchase Agreement shall be considered a Qualified Bid.

15. The Trustee may negotiate any Qualified Bid prior to the Auction.

16. After the Bid Deadline, the Trustee shall review each Qualified Bid on the basis of factors relevant to the sale process including, without limitation, factors affecting the timing and certainty of consummation of the proposed sale. After such review, the Trustee shall determine those parties deemed qualified to participate in the Auction.

17. If the Trustee receives at least one Qualified Bid in addition to the Initial Bid, the Trustee shall conduct the Auction to obtain the High Bid and the High Back-Up Bid to be

approved by the Court. In the event that the High Bid fails to close, the Trustee shall provide notice to the High Back-Up Bid of the failure to close, and, provided that such notice is provided within fifteen (15) days of entry of the Sale Order, shall proceed to closing with the High Back-Up Bidder.

18. If the Trustee conducts the Auction, it shall be conducted before the Honorable William C. Hillman, United States Bankruptcy Court, 12th Floor, 5 Post Office Square, Boston, Massachusetts, or at such other place and time designated by the Court pursuant to this Bid Procedures Motion. Only Qualified Bidders shall be eligible to participate in the Auction. For all purposes herein, the Buyer's bid pursuant to the Asset Purchase Agreement shall be considered a Qualified Bid.

19. The Auction shall commence with the announcement of the highest and otherwise best Qualified Bid as determined in the sole discretion of the Trustee. The Auction may proceed as an open auction or a sealed bid auction, at the discretion of the Trustee, but subject to the approval of the Court. In the event the Trustee conducts an open auction, Qualified Bidders must increase their bids in increments of not less than One Hundred Thousand ($100,000) Dollars. After the conclusion of the Auction, the Court shall review and consider all further bids received for the Assets and determine and announce the High Bid and the High Back-Up Bid. The holder of the High Bid shall be deemed to be the Successful Purchaser and shall proceed to a closing of the sale in accordance with the terms set forth herein and the Sale Order. In the event that the holder of the High Bid fails to close, the High Back-Up Bid shall proceed to closing with the Trustee within three (3) business days after notice to the High Back-Up Bidder of the aforesaid failure to close, provided that the Trustee must provide such notice to the High Back-Up Bid within fifteen (15) days of entry of the Sale Order.

13491845.15

20. The Trustee shall seek entry of an Order approving the High Bid and the High Back-Up Bid and related relief at the Sale Hearing.

21. All Bid Deposits shall be held by the Trustee in a Trustee account. In the event that the Deposits earn interest, any such interest shall accrue to the benefit of and be payable to the party submitting the respective Proposed Bid. Within five (5) business days of the Auction, Bid Deposits (and, in the case of the Buyer, the Deposit) shall be returned to the bidders, except Bid Deposits provided by the High Bidder and the High Back-Up Bidder. The aforesaid Bid Deposits shall be held until the closing on the sale of the Purchased Assets and applied in accordance with the terms of the Successful Purchaser's accepted bid. In the event the High Bidder proceeds to a timely closing of the sale, the Bid Deposit of the High-Back-Up Bidder shall be returned by the Trustee forthwith. Otherwise, the Trustee shall proceed to closing of the sale of the Purchased Assets with the High Back-Up Bidder and applied in accordance with the terms of such Bidder's accepted bid.

**D.    Sale Hearing Date; Objection and Counteroffer Deadline**

22. Buyer has a right to terminate the Asset Purchase Agreement unless the Court enters a sale order approving the sale to Buyer in the form of the Sale Order or otherwise reasonably satisfactory to Buyer. The sale procedures contemplated in the Asset Purchase Agreement require that the deadline for objections and counteroffers be the Bid Deadline.

**E.    Assumption and Assignment of License and Additional Assigned Contracts**

23. Under the Asset Purchase Agreement, and except as described above in connection with the DEEP License, the Trustee shall pay any cure costs associated with the Assigned Contracts, which are to be assumed and assigned as a condition to the closing.

**F.     Notice**

24.    To ensure that adequate notice of the Asset Sale is provided, the Trustee seeks approval of a form of Notice of Sale attached hereto as <u>Exhibit D</u> (the "<u>Notice of Sale</u>").

25.    Within three (3) business days following entry of the Bidding Procedures Order, the Trustee will serve copies of the Bidding Procedures Order and the Notice of Sale upon: (a) the Office of the United States Trustee for the District of Massachusetts (the "<u>US Trustee</u>"); (b) all parties known to have asserted liens against the Purchased Assets; (c) federal and state taxing authorities offices which have a reasonably known interest in the relief requested in the Motion; (d) counsel to the Buyer; and (e) all parties who have filed notices of appearance requesting service of notices and pleadings in this case and any party that has expressed to the Trustee an interest in a transaction with respect to the Purchased Assets. In addition, within three (3) business days of the entry of the Bidding Procedures Order, the Trustee will serve a copy of the Notice of Sale upon all other creditors and other persons entitled to notice under Bankruptcy Rule 2002(a).

26.    Within three (3) business days of entry of the Bidding Procedures Order, the Trustee will serve copies of the Bidding Procedures Order and the notice of the assumption and assignment of the Assigned Contracts substantially in the form attached hereto as <u>Exhibit E</u> upon all non-debtor parties to Assigned Contracts.

27.    The Trustee submits that each of the foregoing notices provides the recipient with ample notice of the relief requested, the relative impact that such relief may have on the recipient and the procedures that a recipient must follow in the event that such recipient wishes to respond, participate in the Auction, or otherwise object to the relief requested, as the case may be, and that that the foregoing notices therefore constitute good and sufficient notice of the

13491845.15

Bidding Procedures, the Sale Hearing, the assumption and assignment of the Assigned Contracts, this Motion, and all relief contemplated thereby.

**Basis for Relief**

**A.    The Asset Sale is Within the Trustee's Sound Business Judgment**

28.    Section 363 (b)( 1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

29.    The proposed Asset Sale pursuant to the Asset Purchase Agreement (as may be modified at the Auction) is supported by sound business justifications. In light of the significant marketing efforts undertaken by the Debtor and its investment banker over a period of several months prior to the Petition Date, the Trustee believes that the relatively narrow pool of potential purchasers for the Debtor's highly specialized assets have been adequately identified. As the Trustee is without sufficient funds to continue to maintain the preserve the intellectual property for an extended period of time, the Trustee firmly believes that creditors will receive more value through a prompt sale of the Purchased Assets than through continued marketing of such Assets. Accordingly, a prompt sale is necessary to maximize the value of the Purchased Assets for the estate.

    **i)    Sound Business Justification Exists**

30.    There is more than adequate business justification to sell the Purchased Assets to a successful bidder. Based upon the fact that this is a Chapter 7 estate, with no continued

business operations, the Trustee believes that a prompt sale of the Purchased Assets is in the best interests of the Debtor's estate.

### ii) The Asset Sale is For Fair And Reasonable Consideration

31. Moreover, the Trustee has determined that the Asset Sale according to the sale procedures described herein and in the Asset Purchase Agreement will enable the Trustee to obtain the highest and best offers for the Purchased Assets and maximize the value of the Purchased Assets for the estate.

### iii) The Asset Sale Is In Good Faith

32. The Asset Purchase Agreement provides that a Sale Order will require a finding of the Court that the Successful Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code. The Trustee has fully disclosed and requested the Court's approval of all of the terms and conditions of the proposed sale and intends to provide notice as directed by the Court. Furthermore, the Trustee will be prepared to introduce evidence at the Sale Hearing regarding the conduct of the Auction and the negotiation of the Asset Purchase Agreement. Accordingly, the Asset Sale pursuant to the Asset Purchase Agreement has been proposed, and is, in good faith.

### iv) Adequate Notice of the Asset Sale is Being Provided

33. In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or by public auction. Further, pursuant to Bankruptcy Rule 2002, twenty-one (21) days notice by mail is sufficient notice of the proposed use, sale, or lease of property of the estate other than in the ordinary course of business. Subject to Bankruptcy Rule 6004, the notice of a proposed use, sale, or lease of property required under Bankruptcy Rule 2002(a)(2) must include the time and place of any public sale, the terms and

13491845.15

conditions of any private sale, and the time fixed for filing objections. *See* Fed. R. Bankr. P. 2002(c)(1). Moreover, the notice of a proposed use, sale, or lease of property is sufficient if it generally describes the property. *Id*.

34. The Trustee respectfully submits that the notice, procedures, and rules set forth in the Motion satisfy the notice requirements of the Bankruptcy Rules and section 363(b) of the Bankruptcy Code, constitute good and sufficient notice, and that no other or further notice is required.

**B.     The Break-Up Fee is Warranted**

35. To compensate Buyer for serving as a stalking horse whose bid will be subject to higher or better offers, the Trustee and Buyer seek authority for the Trustee to pay Buyer the Break-Up Fee in various circumstances in which the Buyer is not the successful bidder, including circumstances in which a sale to another bidder may not have been approved. The Break-Up Fee, when earned, shall constitute an administrative claim under Bankruptcy Code sections 503(b) and 507(a)(2).

36. The Trustee and Buyer believe that the Break-Up Fee is reasonable, given the benefits to the estates of having the Asset Purchase Agreement as a definitive agreement and the risk to Buyer that a third-party offer ultimately may be accepted, and that the Break-Up Fee is necessary to preserve and enhance the value of the Debtor's estate.

37. Bidding incentives such as a break-up fee encourage a potential purchaser to invest the requisite time, money, and effort to negotiate with a trustee and perform the necessary due diligence attendant to the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the Chapter 7 process. Historically, bankruptcy courts have approved bidding incentives similar to the Break-Up Fee under the business judgment rule, which prescribes

against judicial second-guessing of the actions of a corporation s board of directors taken in good faith and in the exercise of honest judgment. *See, e.g., In re 995 Fifth Avenue Assocs. L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (bidding incentives "may be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking.") (citation omitted); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (establishing three basic factors for determining whether to permit such fees in bankruptcy: whether (1) relationship of parties who negotiated break-up fee is tainted by self-dealing or manipulation; (2) fee hampers, rather than encourages, bidding; and (3) amount of fee is unreasonable relative to purchase price).

38.     The United States Court of Appeals for the Third Circuit also established standards for determining the appropriateness of bidding incentives in the bankruptcy context. *In Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999), the Court found that even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions, the administrative expense provisions of Bankruptcy Code section 503(b) govern in the bankruptcy context.  Accordingly, to be approved, bidding incentives must provide some benefit to the debtor's estate. *See id*. at 533.

39.     The *O'Brien* court identified at least two instances in which bidding incentives may provide benefit to the estate.  First, benefit may be found if assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited. *Id*. at 537.  Second, where the availability of bidding incentives induce a bidder to research the value of the debtor and submit

- 15 -

13491845.15

a bid that serves as a minimum or floor bid on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth. *Id*.

40. The Break-Up Fee satisfies both the business judgment rule and the *O'Brien* court's more restrictive administrative expense standard. The Asset Purchase Agreement and the Break-Up Fee are the product of good faith, arm's-length negotiations between the Trustee and Buyer. The Break-Up Fee is fair and reasonable in amount, particularly in view of Buyer's efforts to date and the risk to Buyer of not acquiring the Purchased Assets. Further, the Break-Up Fee already has encouraged competitive bidding, in that Buyer would not have entered into the Asset Purchase Agreement without this provision. The Break-Up Fee thus has "induc[ed] a bid that otherwise would not have been made and without which bidding would [be] limited." *Id*. Similarly, Buyer's offer, which was formulated only after substantial due diligence review of the Purchased Assets and their value, provides "a minimum bid on which other bidders can rely, thereby increasing the likelihood that the price at which the [Purchased Assets will be] sold will reflect [their] true worth." *Id*.

41. In sum, the Trustee's ability to offer the Break-Up Fee enables him to ensure that the sale of the Purchased Assets will be to a contractually-committed bidder at a price they believe to be fair. At the same time, the Break-Up Fee provides the Trustee with the potential of even greater benefit to the estate. Accordingly, the Break-Up Fee should be approved.

C. **Assumption and Assignment of Executory Contracts**

42. As required by the Asset Purchase Agreement, the Trustee also seeks, by this Motion, authority to assume and assign to Buyer the Assigned Contracts. In assuming and assigning the Assigned Contracts, the Trustee and Buyer shall comply with the provisions of

- 16 -

13491845.15

Bankruptcy Code Section 365(f)(2).

43. Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if -
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2). Under Bankruptcy Code section 365(a), a trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a).47. Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor. This subsection provides:

> (b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

44. The meaning of adequate assurance of future performance depends on the facts and circumstances of each case, but should be given practical, pragmatic construction. *EBG*

- 17 -

13491845.15

*Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992); *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) (the degree of assurance necessary falls considerably short of an absolute guaranty); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

45. Among other things, adequate assurance may be provided by demonstrating the assignee s financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

46. The Trustee will demonstrate facts at the Sale Hearing to show the financial wherewithal of Successful Purchaser's experience in the industry and its willingness and ability to perform under the contracts to be assumed and assigned to it. The Sale Hearing will therefore provide the Court and the other interested parties the opportunity to evaluate and, if necessary, challenge the ability of Buyer or the successful bidder to provide adequate assurance of future performance under the contracts to be assumed, as required under Bankruptcy Code section 365(b)(1)(C). The Court should therefore authorize the Trustee to assume and assign contracts as set forth herein.

47. The Trustee also requests that the Court include in its order relating to this Motion provisions barring non-debtor parties to executory contracts, assumed and assigned under such order, from: (i) asserting any default, loss, or liability against the assignee of such contract based on any event or circumstance arising prior to the date of assignment; or (ii)

objecting to the assumption and assignment of its contract, unless the non-debtor party timely objects to this Motion.

### D.  Authorization for Sale Free and Clear of Liens, Claims, Encumbrances, and Interests

48. Bankruptcy Code § 363(f) provides that a debtor may sell property free and clear of any interest in such property of an entity other than the estate, only if:

> (a) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (b) such entity consents;
>
> (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (d) such interest is in bona fide dispute; or
>
> (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). The Trustee is not aware of any party asserting lien rights in the assets. Accordingly, a sale free and clear of liens, claims, and interests is permitted under Bankruptcy Code § 363(f)(3).

**Conclusion**

WHEREFORE, the Trustee respectfully requests that the Court enter orders (i) (a) authorizing bidding procedures to be employed in connection with the Asset Sale of the Purchased Assets to Buyer or another bidder submitting a higher or better offer at the Auction; (b) authorizing a break-up fee in connection therewith; (c) scheduling an Auction and hearing to consider approval of the Asset Sale; and (d) approving the form and manner of notice of the Motion and the Sale Hearing; and (ii) (a) approving the Asset Purchase Agreement, a true and correct copy of which, except for the schedules thereto, is attached hereto and made a part hereof as Exhibit A; or an asset purchase agreement similar to the Asset Purchase Agreement submitted in connection with a higher or better offer at the Auction; (b) authorizing and approving a sale of the Purchased Assets free and clear of liens, claims, encumbrances and interests; (c) authorizing assumption and assignment of certain executory contracts, and (d) granting related relief.

        JOHN J. AQUINO, CHAPTER 7 TRUSTEE
        OF PEPTIMMUNE, INC.

        By his counsel,

        /s/ Donald F. Farrell, Jr.
        Donald F. Farrell, Jr. (BBO # 159580)
        ANDERSON AQUINO LLP
        240 Lewis Wharf
        Boston, MA  02110
        617-723-3600
        dff@andersonaquino.com

Dated: July 27, 2011.