UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

In re:

PEPTIMMUNE, INC.,

　　　　　　　　　　Debtor.

Chapter 7
Case No. 11-12298 -WCH

## MOTION OF CHAPTER 7 TRUSTEE FOR AUTHORITY
## TO SELL ASSETS AT PRIVATE SALE PURSUANT TO 11 U.S.C. §363

John J. Aquino (the "Trustee"), the duly appointed Chapter 7 trustee of the estate of

Peptimmune, Inc., the debtor herein (the "Debtor"), hereby moves this Court for the entry of an

Order pursuant to 11 U.S.C. §363, Fed. R. Bankr. P. 6004, and MLBR 6004-1(a), authorizing the

Trustee to sell certain assets of the Debtor's estate.   In support of this Motion, the Trustee states as

follows:

### Background

1.      The Debtor filed a voluntary petition under Chapter 7 of the United States

Bankruptcy Code on March 21, 2011 (the "Petition Date").   Thereafter, the United States Trustee

for the District of Massachusetts appointed the Trustee Chapter 7 Trustee.

2.      The Debtor was a clinical stage biotechnology company engaged in the business of

developing therapeutics for the treatment of central nervous system and autoimmune disorders.

3.      In 2007, the Debtor made the first of several inventions for a technology known as

Directed Expansion of Epitope Permutations (the "DEEP Technology"), which was derived and

expanded in the course of developing another technology known as PI-2301.

4.      In August 2010, the Debtor formed a wholly owned subsidiary, Declion

Pharmaceuticals, Inc. ("Declion"), which in turn formed a wholly owned subsidiary, Declion SAS

("SAS"). Subsequent to the formation of Declion, the Debtor assigned certain of the intellectual property and patent applications relevant to the DEEP Technology to Declion.

5.      The Debtor's *Schedule B - Personal Property* filed in the case lists the Debtor's interest in Declion and the DEEP Technology as property of the estate. The DEEP Technology and the Debtor's interest in Declion are not encumbered by any liens.

### The Purchase Offer

6.      The Trustee has received an offer from Zermatt Pharmaceuticals, Inc. (the "Buyer"), to purchase certain assets of the Debtor's bankruptcy estate related to the DEEP Technology, as more particularly described on Exhibit A, attached hereto. By way of summary, the subject assets include all outstanding shares of Declion (and, derivatively SAS), the DEEP Technology, and a limited amount of personal property related to the DEEP Technology (collectively, the "Assets"). The purchase price for the Assets is $10,000, $5,000 of which is in the form of cash. In addition, the Buyer's principals, Thomas P. Mathers and Eric H. Zanelli, both of whom previously were employed by the Debtor, have agreed to each waive $2,500 of their priority wage claims filed in the case pursuant to 11 U.S.C. §507(a)(4). The Trustee has reviewed the proofs of claim filed on behalf Messrs. Mathers and Zanelli and does not dispute the claimants' entitlement to the wage priority component of such proofs of claim. Accordingly, the Trustee asserts that the value of the offer to the estate is $10,000 (the "Purchase Price"). The Buyer has provided the $5,000 cash component of the offer to the Trustee as a deposit (the "Deposit"). The sale shall close upon the entry of a final order approving this proposed sale. In order to maximize the value of the Assets to the estate and to minimize additional costs associated with the maintenance of such Assets, the Trustee believes that it is in the best interests of the estate to consummate the transaction without delay following entry of an Order approving a sale, whether to the proposed purchaser herein, or such other successful bidder as the Court may determine. Accordingly, the Trustee requests that the Court find that there is cause

to waive and/or vacate the stay imposed by Bankruptcy Rule 6004(h).

7.      The connections between the Buyer's principals and the Debtor, its creditors and the bankruptcy estate are as follows:

Mr. Mathers was employed by the Debtor between 2003 and 2011 and served in various capacities, most recently as CEO.  In addition, Mr. Mathers continues to serve as chairman and president of Declion Pharmaceuticals, Inc.   Mr. Zanelli was employed by the Debtor as Vice President of Research between 2004 and 2011.  In addition, Mr. Zanelli continues to serve as president of Declion SAS.

Neither Mr. Mathers nor Mr. Zanelli has any connections to the Trustee or creditors of the Debtor's bankruptcy estate.   In the interest of full disclosure, the Trustee states that Mr. Mathers provided considerable assistance to the Trustee in the course of the Trustee's marketing of the PI-2301 intellectual property, including assistance in establishing an electronic data room to allow prospective purchasers to conduct due diligence with respect to the intellectual property.  Mr. Mathers also assisted the Trustee by locating documentation in response to information requests and by providing answers to highly technical questions posed by prospective purchasers of the PI-2301 intellectual property during their due diligence review.

Mr. Mathers was not involved in the Trustee's marketing efforts relating to the DEEP Technology.  In addition, the Trustee hereby states that no consideration was given or promised to Mr. Mathers in exchange for the assistance described above.

8.      Pursuant to Section 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 6004, the Trustee requests authorization to sell the Assets, subject to all liens, claims, encumbrances, and interests on an "as is", "where is" and "with all faults" basis.

9.      The Trustee requests that the Court approve the terms and conditions of the sale set forth in this motion and the notice described herein.

## Sale Pursuant To Section 363 Of The Bankruptcy Code

10.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. 11 U.S.C. §363(b)(1).

11.    In accordance with Federal Rule of Bankruptcy Procedure 6004(f)(1), sales of property outside the ordinary course may be by private sale or public auction. The Trustee has determined, in his reasoned business judgment, that the private sale of the Assets as described herein is the most cost efficient means to maximize the value of the Assets for the estate.

12.    The Trustee believes that the offer of the Buyer is fair and reasonable.    The Assets have effectively been marketed over a multi-year period, during which it has become apparent that notwithstanding some preliminary experiments required for inclusion in patent applications, the DEEP Technology is still largely conceptual.  The Trustee's determination as to the value of the Assets is reflected in the following facts:

(a) In 2008, the Debtor completed the sale of its first tranche of Series D Preferred Stock.  The valuation of the Debtor's equity by investors was based 100% upon the value of the Debtor's other technology, PI-2301.  No value was ascribed to the DEEP Technology as it was considered too early stage for any valuation.  Similarly, in 2009, the Debtor entered into an Option to License and Merger Agreement with Novartis Pharmaceutical, Ltd., which chose not to pursue the acquisition of the DEEP Technology for the same reason.

(b) Since 2007, the Debtor has attempted to license the DEEP Technology to prospective collaborators and pharmaceutical companies for the purpose of developing novel vaccines, point of care assays and novel antibodies. Although the Debtor did enter into a limited number of research agreements with third parties in order to explore the utility of the DEEP Technology in several applications such as antibody discovery and vaccine development, only a very limited data set has been produced.

(c) Pursuant to a letter agreement dated February 16, 2010, the Debtor engaged MTS Health Partners, L.P. ("MTS") for the purpose of raising $35,000,000 in equity financing to fund the clinical trial of the Debtor's PI-2301 technology.  As a part of the financing strategy, MTS pursued the outright license or sale of the DEEP Technology to more than twenty-five pharmaceutical and technology companies, to no avail.

4

(d) In August 2010, following the formation of Declion and SAS, the Debtor filed grant applications with, among others, the Bill and Melinda Gates Foundation and the International Aids Vaccine initiative, to fund early stage research for the DEEP Technology, but none of the applications were awarded grants.

13.    The Trustee recently consummated a sale of certain of the Debtor's intellectual property rights and related estate assets to third party purchaser a purchase price of approximately $1,500,000.  In connection with the foregoing asset sale, and in connection with the administration of this estate generally, the Trustee has expended significant effort to effectuate sales of the Debtor's assets.  The purchaser of the aforesaid assets did not express interest in acquiring the Assets, or any portion thereof, for its own use.  To date, the sale proposed herein represents the only offer made for the Assets.

14.    Based upon the extensive marketing efforts undertaken by the Debtor prior to the Petition Date, and upon the Trustee's experience in this case to date, the Trustee believes that a sale of the Assets to the Buyer for the proposed $10,000 Purchase Price represents fair value for the Assets.

### Proposed Terms Of Sale And Sale Procedures

15.    The Trustee proposes that the sale be conducted in accordance with the following terms and procedures:

a.    The Assets shall be transferred on an "as is" "where is" and "with all faults" basis, without any representation or warranty of any kind by the Trustee. The sale shall transfer the Assets free and clear of any and all liens, claims, and encumbrances, except that the Assets shall remain subject to whatever intellectual property license agreements may already exist which grant rights to utilize the DEEP assets and related property rights.

b.    The Assets may be withdrawn from sale prior to or during the hearing on the sale for any reason whatsoever.

c.    In the event that a Qualified Counteroffer (as defined below) for the Assets is timely submitted, the Court shall conduct an auction of the estate's interest in the Assets at the time and place of the hearing on the sale.  Bidding increments and the manner of the auction shall be determined by the Court and announced at the commencement of the auction.

5

d.     In order to a submit a "Qualified Counteroffer", a party must submit to the Trustee by the Counteroffer Deadline set by the Court, a deposit of $5,000 and a written counteroffer to purchase the estate's interest in the Assets that includes, at a minimum, the following terms: (i) an agreement to purchase the Assets "as is", "where is" and "with all faults" for the sum of not less than $10,500.00; and (ii) an agreement to close on the sale of the Assets promptly upon the entry of a final order of the Bankruptcy Court approving the sale.

e.     By making a Qualified Counteroffer, the party making such offer will be deemed to have acknowledged and agree that: (i) it had an opportunity inspect and examine the Assets prior to making its offer and that it relied solely on that review and upon its own investigation and inspection in making its offer; (ii) it is not relying upon any written or oral statements, representations, or warranties of the Trustee, its agents or representatives; and (iii) the counteroffer shall remain open for a period of not less than thirty (30) days following the Court's approval of any offer to purchase the estate's interest in the Assets.

f.     The deposit of the successful bidder for the Assets shall be deemed to be forfeited to the estate if said successful purchaser fails to complete the sale within ten days following entry of a final order approving the sale.

16.     The Trustee additionally requests authority to consummate a sale of the Assets to the second highest bidder without necessity of further Court Order, in the event of a default by the successful bidder.

## Notice

17.     The Trustee requests that this Court approve the proposed *Notice Of Intended Private Sale Of Assets, Deadline For Submitting Objections, Higher Offers and Hearing Date* (the "Notice") attached hereto as Exhibit B. The Trustee asserts that the Notice provides sufficient information regarding the proposed sale to permit creditors and parties in interest to respond to the relief requested by the Trustee. The Trustee proposes to serve such Notice on each of the Debtor's creditors as identified in the Schedules, the United States Trustee, federal and state taxing authorities, all parties or their counsel who have filed an appearance in this case or who have requested service of notices in this case, and all parties that have expressed interest in acquiring the Assets to the Trustee. The Notice shall be transmitted by first-class mail, postage prepaid, or by electronic mail promptly upon the

Court's approval of the Notice and the establishment of dates submission of counter-offers and for filing objections to the proposed sale.

18.    Notice of this Motion has been provided to the United States Trustee, counsel to the Debtor, and all parties or their counsel who have filed notices of appearance in this case.

WHEREFORE, the Trustee respectfully prays that this Court enter an Order:

i    authorizing the Trustee to sell the Assets on the terms and conditions set forth herein subject to the submission of higher or better offers,

ii.    Approving the terms and conditions of the sale set forth in this motion and/or in the Notice filed herewith;

iii.    Approving the form of the Notice filed herewith;

iv.    Determining that notice shall be sufficient if served in accordance with this Motion;

v.    Waiving and/or vacating the stay imposed by Bankruptcy Rule 6004(h);

vi.    Authorizing the Trustee to consummate a sale of the Assets to the second highest bidder without further Court Order, in the event of a default by the successful bidder;

vii.    Authorizing and empowering the Trustee to take such further actions as may be deemed necessary and/or appropriate to consummate the transactions provided for by this Motion; and

viii.    Granting such other and further relief as this Court deems just and proper.

JOHN J. AQUINO
CHAPTER 7 TRUSTEE

By his counsel,

/s/ Philip C. Silverman
Philip C. Silverman (BBO 555492)
ANDERSON AQUINO LLP
240 Lewis Wharf
Boston, MA 02110
(617) 723-3600
psilverman@andersonaquino.com

Dated:  September 19, 2011

7